**Electronically Filed
Intermediate Court of Appeals
CAAP-14-0000791
29-SEP-2016
09:02 AM**

NO. CAAP-14-0000791

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

DONNA DAUM, Petitioner-Appellee, v.
CHRISTOPHER WEBSTER, Respondent-Appellant

APPEAL FROM THE DISTRICT COURT OF THE FIFTH CIRCUIT
(CASE NO. 5SS-14-1-0026)

SUMMARY DISPOSITION ORDER
(By: Fujise, Presiding Judge, Leonard and Ginoza, JJ.)

Respondent-Appellant Christopher Webster (**Webster**) appeals from the Injunction Against Harassment and the Order on Petition for Injunction Against Harassment (**Order on Petition**), both filed on March 31, 2014, in the District Court of the Fifth Circuit (**District Court**).[1]

Petitioner-Appellee Donna Daum (**Daum**) filed a Petition for Ex Parte Temporary Restraining Order and for Injunction Against Harassment (**Petition**) pursuant to Hawaii Revised Statutes (**HRS**) § 604-10.5 (Supp. 2015). The District Court granted the Petition, enjoining Webster from contacting, threatening or

---

[1]    The Honorable Frank Rothschild presided.

harassing Daum, and from entering or visiting Daum's residence and place of employment for a period of three years.

On appeal, Webster contends that the Injunction Against Harassment was not supported by clear and convincing evidence. Webster also argues that the District Court violated his due process rights when (1) it interfered with Webster's attempt to cross-examine Kasheda Daum (**Kasheda**); (2) it refused to order Daum to disclose the name of her counselor during cross-examination; (3) it improperly considered Daum's "altered testimony" submitted after all the testimony and exhibits; and (4) it improperly considered evidence without providing Webster the opportunity to examine the evidence.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Webster's points of error as follows:

(1)    HRS § 604-10.5 provides in relevant part:

**Power to enjoin and temporarily restrain harassment.**
(a) For the purposes of this section:

"Course of conduct" means a pattern of conduct composed of a series of acts over any period of time evidencing a continuity of purpose.

"Harassment" means:

(1)    Physical harm, bodily injury, assault, or the threat of imminent physical harm, bodily injury, or assault; or

(2)    An intentional or knowing course of conduct directed at an individual that seriously alarms or disturbs consistently or continually bothers the individual and serves no legitimate purpose; provided that such course of conduct would cause a reasonable person to suffer emotional distress.
. . . .

If the court finds by clear and convincing evidence that harassment as defined in paragraph (1) of that

2

definition exists, it may enjoin for no more than three years further harassment of the petitioner, or that harassment as defined in paragraph (2) of that definition exists, it shall enjoin for no more than three years further harassment of the petitioner; provided that this paragraph shall not prohibit the court from issuing other injunctions against the named parties even if the time to which the injunction applies exceeds a total of three years.

Here, the District Court did not specifically find that Webster engaged in paragraph (1) or paragraph (2) harassment. However, the Petition did not assert that Webster subjected Daum to "[p]hysical harm, bodily injury, assault, or the threat of imminent physical harm, bodily injury, or assault" under paragraph (1). See HRS § 604-10.5. Indeed, there was no evidence adduced at the hearing to support a finding of paragraph (1) harassment. Thus, we presume that the District Court granted the Injunction Against Harassment because it determined that Webster engaged in an intentional or knowing course of conduct directed at Daum that seriously alarmed or disturbed consistently or continually bothered Daum, and served no legitimate purpose, and that would cause a reasonable person to suffer emotional distress. HRS § 604-10.5.

This court has held that "[a]n injunction issued pursuant to HRS § 604-10.5 may result in severe personal consequences for the individual enjoined. It infringes, first of all, upon the enjoined individual's freedom of movement, a fundamental right guaranteed by the Hawai'i Constitution." Luat v. Cacho, 92 Hawai'i 330, 346, 991 P.2d 840, 856 (App. 1999). As such, this court has recognized that "HRS § 604-10.5 requires that the clear and convincing standard of proof be applied in

determining whether conduct rises to the level of paragraph (2) harassment." Id. at 342, 991 P.2d at 852.

In addition, a person engages in paragraph (2) harassment only if it "would cause a reasonable person to suffer emotional distress." HRS § 604-10.5(a)(2). "The reasonable person standard is an objective one and a trial court's determination regarding whether a reasonable person would suffer emotional distress as a result of a course of conduct is reviewed on appeal de novo." Luat, 92 Hawaiʻi at 343, 991 P.2d at 853. Under the objective standard, this court is required to determine "whether 'a reasonable person, normally constituted,' would have suffered emotional distress as a result of" Webster's course of conduct, including his remarks to Daum in the courthouse filing room. Id. (citing Tabieros v. Clark Equip. Co., 85 Hawaiʻi 336, 362, 944 P.2d 1279, 1305 (1997)).

In the instant case, the District Court granted the Injunction Against Harassment based primarily on two incidents, an interaction between Daum and Webster in the filing room of the district court building and an interaction in the Longs parking lot, but also in the context of several prior incidents, which together reflected an escalating level of disturbance and alarm. With respect to these incidents, the District Court found that the testimony of Daum and Daum's witnesses was very credible and that Webster's testimony, in essence, was not consistent with that testimony. "It is for the trial judge as fact-finder to assess the credibility of witnesses and to resolve all questions of fact; the judge may accept or reject any witness's testimony

in whole or in part." State v. Eastman, 81 Hawai'i 131, 139, 913 P.2d 57, 65 (1996) (citation omitted). As the District Court found Kasheda, Mary Kealoha (**Kealoha**), and Daum to be credible witnesses, we necessarily accept their testimony regarding these incidents, notwithstanding Mike Joseph and Webster's conflicting testimony.

Here, although Webster may have misunderstood the scope of the Injunction Against Harassment against Daum's husband, David Timko (**Timko**), we conclude that Webster's yelling at Daum in the courthouse and threatening to have her arrested, particularly where she was located in a position in which she felt "trapped" and unable to leave without going past Webster, was seriously alarming or disturbing and "would cause a reasonable person to suffer emotional distress," as required by HRS § 604-10.5, in light of the earlier incidents between the parties.

We also consider Webster's alleged action in the Longs parking lot on the same day, shortly after their encounter at the courthouse. Webster appeared behind Daum as she was getting a stroller out of her car and said, "Your husband's going to end up in jail. You're going to get hurt[.]" In light of Webster's earlier threats to Daum, his calls to the police, and his apparent drives past her house, Webster's statement to Daum in the Longs parking lot was seriously alarming or disturbing and "would cause a reasonable person to suffer emotional distress."

Although the District Court did not orally reference the clear and convincing evidence standard that is applicable to

the issuance of an Injunction Against Harassment, it is stated in the written injunction and appears to have been satisfied in this case.

Thus, we conclude that there was sufficient evidence for the District Court to conclude that Webster's actions constituted an intentional course of conduct directed at Daum that seriously alarmed or disturbed her, that served no legitimate purpose, and that this course of conduct would cause a reasonable person to suffer emotional distress.

(2) Webster argues that the District Court violated his due process rights when it interfered with Webster's attempt to cross-examine Kasheda and asserts that the District Court "took over the questioning and then declared its own conclusion about the location of the act, even though Kasheda herself was never quite able to describe the actual location." Daum submits that "there was no violation of [Webster's] due process right to complete the cross-examination of Kasheda as [Webster's counsel] continued her cross-examination when the Judge completed his questions necessary to ascertain a location of one of two incidents."

The fourteenth amendment to the United States Constitution and article I, section 5 of the Hawai'i Constitution provide, in relevant part, that no person shall be deprived of "life, liberty, or property without due process of law[.]" The Hawai'i Supreme Court has recognized that the "right to cross-examine a witness, although subject to waiver, is a fundamental right that is basic to our judicial system." Kekua v. Kaiser

Found.Hospital, 61 Haw. 208, 221, 601 P.2d 364, 372 (1979).

Nevertheless, "the extent of cross-examination is a matter largely within the discretion of the trial court and will not be the subject of reversal unless clearly prejudicial to the complaining party." Id.

Pursuant to HRS § 604-10.5, the "court shall receive all evidence that is relevant at the hearing and may make independent inquiry." Moreover, it is within the "trial court's discretion to question a witness to elicit facts for the clarification of evidence so long as it is done in a fair and impartial manner." State v. Brooks, 44 Haw. 82, 87, 352 P.2d 611, 615 (1960) (citations omitted).

Here, Kasheda testified that "Webster walked by and under his breath he said . . . 'I'll bitch slap you.'" Kasheda related that this incident occurred when she was "sitting on the bench outside of the legal office." During Kasheda's cross-examination, the District Court stated, "I think I already made clear, the location is not clear to the Court. I have no idea what you're talking about. So I cannot assess the accuracy of this information. I can't assess the relevance of this information." The District Court asked Kasheda, "Where is this law office?" In response, Kasheda said that the law office was near the main entrance of the district court building. Webster's counsel then resumed her cross-examination.

The District Court made an independent inquiry about the location of the law office. The purpose of the District Court's inquiry apparently was to clarify the location of where

Webster allegedly said, "I'll bitch slap you." The District Court's clarification of the evidence was conducted in a fair and impartial manner. Moreover, Webster contends that his alleged statement to Kasheda was not "pertinent to whether [Webster] committed an act of harassment against [Daum.]" Thus, Webster was not prejudiced by the District Court's independent inquiry. We conclude that this point of error is without merit.

(3) At the evidentiary hearing, the District Court determined that the name of Daum's counselor was not relevant. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequences to the determination of the action more probable or less probable than it would be without the evidence." Hawaii Rules of Evidence (HRE) Rule 401. "A trial court's determination that evidence is relevant turns on the application of HRE Rule 401 (1993) and is reviewed under the right/wrong standard." Steger, 114 Hawai'i at 172, 158 P.3d at 290 (citation and footnote omitted).

During Daum's cross-examination, the following exchange took place:

> [Webster's counsel]: Who's your counselor?
>
> [Daum]: Do I need to answer that, your Honor?
>
> [The Court]: What's the relevance of knowing who the counselor is?
>
> [Webster's counsel]: I would like to know who it is. I think she stated she's seeking counseling. It would be good to know.
>
>  . . . .
>
> First of all, it would be good to know if its an actual counselor. Second of all, . . . she's alleging my client has committed acts of harassment. One of the elements, as you know, causing a reasonable person to suffer emotional distress or some sort of type of psychological distress here.

So her claim that she's seeking counseling is very relevant to saving that element. I don't see any harm in asking her who that counselor is. She's opened the door to that by stating that.

[The Court]: Well, I think wanting to ask her about whether she was seeing anybody, I don't know what the relevance is. This is a restraining order. There's a request for a restraining order.

[Webster's counsel]: I understand, your Honor. But the last hearing she testified, and it's on the record, that she is seeking counseling as a result of this, as a result of my client's actions, which are directly relevant to the TRO proceeding.

[The Court]: I don't find it to be relevant. Go somewhere else.

[Webster's counsel]: If I may make a record. Again, over the Court's granting of the objection, I am asking the Court to order her to reveal the name of the counselor or therapist that she claims she's seeking counseling from.

[The Court]: I understand.

Do you have some therapist who is under subpoena who might be in the hallway who, if she gives that name, that person is going to be a witness this morning as part of this trial?

[Webster's counsel]: No, your Honor.

[The Court]: Well, move on.

It appears that Webster's attorney sought to elicit the name of Daum's counselor to challenge Daum's credibility. However, the District Court did not err in concluding that the name of Daum's counselor, in and of itself, would not impact the court's assessment of Daum's credibility. Moreover, as previously noted, "an appellate court will not pass upon the trial judge's decision with respect to the credibility of witnesses and the weight of the evidence, because this is the province of the trial judge." Eastman, 81 Hawai'i at 139, 913 P.2d at 59 (citations omitted). The name of Daum's counselor is not otherwise probative of whether Webster's conduct constituted harassment under HRS § 604-10.5. Thus, we conclude that this point of error is without merit.

(4 & 5)   Webster argues that the District Court violated his due process rights when the court allowed Daum to "change her story and alter the timeline of events."   During closing argument, Webster's counsel argued that Daum filed her TRO prior to the incident in the Longs parking lot.   While Daum was making her rebuttal, the District Court asked Daum, who was appearing pro se, to clarify when she filled out her Petition. In response, Daum said that she obtained the TRO packet before the incident in the Longs parking lot, and filed the TRO after the incident in the Longs parking lot.   The District Court's inquiry simply sought to clarify the sequence of events.

Webster also argues that the District Court violated his due process rights because "he was not afforded the opportunity to inspect the time-stamp during the evidentiary hearing," because in the Order on Petition, the District Court noted that the "Petition was date and time stamped on the back of the first page showing when this document was 'LODGED' with the court, that date and time being February 24, 2014 at 3:41 p.m."

HRE Rule 201(a) "governs only judicial notice of adjudicative facts."   Adjudicative facts "are the kind of facts that are ordinarily decided by the trier of fact; for example, who did what to whom, when, where, how and why."   State v. Puaoi, 78 Hawai'i 185, 190, 891 P.2d 272, 277 (1995).   A court may notice facts that are "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot

10

reasonably be questioned." HRE Rule 201(b). Under HRE 201(c), "[a] court may take judicial notice, whether requested or not." "Judicial notice may be taken at any stage of the proceeding." HRE Rule 201(f).

"A trial court's *sua sponte* decision to take judicial notice of an adjudicative fact constitutes an exercise of its discretion." State v. Kotis, 91 Hawai'i 319, 328-29, 984 P.2d 78, 87-88 (1999). In Kotis, the defendant argued that the trial court erred when it took judicial notice of records and files of the case. Kotis, 91 Hawai'i at 340-41, 984 P.2d at 99-100. The supreme court recognized that "taking judicial notice of the records and files of a case may or may not be proper, depending upon the type of record at issue and the purpose for which it is considered." Id. at 343, 984 P.2d at 102.

Here, the District Court noted in the Order on Petition that the date and time stamp on the Petition corresponded with Daum's position and Kasheda's credible testimony. Under Rule 2(b) of the Rules of the District Courts of the State of Hawai'i, "the clerk shall promptly stamp the time and date upon all papers filed." The date and time lodged on the Petition is an "adjudicative fact" properly noticed by a court because it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." HRE Rule 201(b). Thus, it was within the District Court's discretion to take judicial notice of the date and time stamped on the Petition. We conclude that the District Court did

not violate Webster's due process rights when it took the afore-mentioned actions to confirm when Daum filed the Petition.

For these reasons, the District Court's March 31, 2014 Injunction Against Harassment and the Order on Petition are affirmed.

DATED: Honolulu, Hawai'i, September 29, 2016.

On the briefs:

Rosa Flores,
for Respondent-Appellant.

Donna Daum,
Petitioner-Appellee *Pro Se*.

Presiding Judge

Associate Judge

Associate Judge